IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>KAIPO KEOLA MCGUIRE,<br><br>Defendant. | Case No. 23-cr-00054-DKW<br><br>**ORDER DENYING DEFENDANT KAIPO KEOLA MCGUIRE'S MOTION FOR *FRANKS* HEARING AS TO CELL PHONE EXTRACTION WARRANT** |

Defendant Kaipo Keola McGuire moves for a hearing, pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), in order to challenge the validity of a warrant permitting the government to search his cell phone ("motion"). Dkt. No. 48. McGuire argues that the affidavit in support of the warrant, while providing probable cause to search parts of his phone, contained recklessly and materially false statements and/or omissions, which allegedly "mis[led]" the reviewing Magistrate Judge into approving an "overbroad" search of the entire phone that also "lacked particularity."

This Court disagrees. First, based upon *Franks* and its progeny, McGuire was not entitled to an evidentiary hearing as to the statements in the search warrant affidavit. Notably, while McGuire criticizes the authoring law enforcement

officer for "misleading" the Magistrate Judge, he ignores that the officer explained that "targeted searches" can be useful in "some cases", while in "other cases" such techniques may not be so useful, and then asked for permission "to use whatever" technique appeared necessary under the circumstances. In other words, the affidavit did not *mislead* the Magistrate Judge; instead, it openly disclosed the potential challenges and scopes of searching an item such as a cell phone.

    Second, in light of the above, what the instant motion actually concerns is displeasure with the Magistrate Judge's approval of a purportedly "overbroad" and unparticular search warrant. As for the former, the warrant was not overbroad because, under the undisputed circumstances of this case, there was probable cause to search the entirety of McGuire's cell phone. As for the latter, while McGuire's "particularity" argument is far from specific, based upon the Court's review of the warrant, the same does not sufficiently limit the items that may be seized. However, this does little to help McGuire because, as the government asserts, any offending language in the warrant can be easily severed. Moreover, McGuire fails to identify a single piece of evidence seized for which the government did not have probable cause to search his phone and/or was obtained solely due to any offending language. Therefore, for the reasons set forth more fully below, the motion, Dkt. No. 48, is DENIED.

## RELEVANT BACKGROUND

On August 11, 2022, a U.S. Magistrate Judge authorized a warrant, permitting the government to search McGuire's cellular telephone ("Target Device"). Dkt. No. 48-1. The warrant was accompanied by an affidavit of U.S. Postal Inspector Brian Hess. Therein, Inspector Hess set forth the following facts pertinent to probable cause:

On August 5, 2022, while inspecting mail in-transit at a postal facility, Hess identified a package addressed to "Makani Noa" as "consistent" with a shipment containing controlled substances. *Id*. at ¶ 7. The same day, Hess applied for and obtained a search warrant of the package. *Id*. at ¶ 8. On August 7, 2022, Hess searched the package, finding two bundles containing approximately 2,490 grams of methamphetamine. *Id*. at ¶¶ 8-9. On August 8, 2022, Hess "replicated" a package to look and feel like the drug-containing original, and arranged for a notice to be delivered indicating that the package was available for pick-up at a post office. *Id*. at ¶¶ 10-11.

A little before noon on August 9, 2022, a white truck arrived at the post office. *Id*. at ¶ 13. The driver of the vehicle, later identified as McGuire, entered the post office and accepted delivery of the replicated package. After exiting the post office, Hess met McGuire on the sidewalk. Hess advised McGuire that he

was a federal agent with the U.S. Postal Inspection Service, and McGuire agreed to talk with Hess about the package. *Id*. McGuire initially stated that he picked-up the package for a roommate, Makani Noa, he did not live at the address on the package, and he did not know what was in it. *Id*. at ¶ 14. McGuire also stated that he was supposed to send a message to, or call his contact in, California once he received the package and await further instructions. *Id*. at ¶ 17. Soon thereafter, McGuire admitted that he did not know anyone named Makani Noa. *Id*. McGuire also stated that he had been involved with three or four previous packages sent to Oahu and was paid $200 for "each", totaling about $1,000 in the "last couple of months." *Id*. at ¶ 18. In return, McGuire sent to California three or four packages, all of which "likely contained money" for the drugs being sent to Oahu. Hess asked McGuire if "the group" spoke about money or drugs, with McGuire responding that, while they did not discuss drugs, he was told that each package sent to California had "approximately $9,000 - $10,000." *Id*.

McGuire then offered that there were messages on a "cell phone application known as Signal" related to the package. *Id*. at ¶ 19. In possession of the Target Device, McGuire showed Hess a "small section of a message thread" on Signal, indicating that McGuire would pick-up the package. Hess also observed a message displaying a screen shot of U.S. Postal Service tracking information.

4

Although McGuire did not want to show the entire message conversation to Hess, he revealed the contact name and telephone number of the person with whom he had been communicating on Signal. *Id*. McGuire admitted to using the Target Device to track packages with which he was involved and signing up for "text" tracking alerts related to the same. *Id*. at ¶ 20. After McGuire declined consent to search the Target Device, Hess seized the same, informing McGuire that he intended to apply for a warrant to search the Target Device. *Id*. at 21.

In his search warrant affidavit, Inspector Hess stated that, based upon his training and experience, evidence of both relevant and irrelevant value may be "comingled" in the text messages, videos, and photographs of cellular telephones. *Id*. at ¶ 25. Hess asserted that, as a result, "a limited review" of "each communication" is necessary. *Id*. Hess further stated that searching the Target Device "may require a range of data analysis techniques." *Id*. at ¶ 26. "In some cases," "carefully targeted searches" can locate relevant evidence without also searching "unrelated materials that may be comingled with criminal evidence." "In other cases, however, such techniques may not yield the evidence described in the warrant." As a result, Hess sought "permission to use whatever dat[a] analysis techniques appear necessary to locate and retrieve the evidence described" in the warrant. *Id*.

5

With respect to the "items to be seized", the warrant directed the Magistrate Judge to Attachment B. Attachment B described the items to be seized to "include all records on the Target Device that relate to violations of law," specifically including federal laws against drug trafficking. Dkt. No. 48-1 at 15. Hess stated that "there are possibly text messages, contact information, photographs or other items communicated within" the Target Device related to illegal activities involving McGuire. Those items included text messages, multimedia messages, emails, internet usage, call logs, contact lists, photographs, and video recordings. *Id*.

On March 29, 2025, in addition to other motions to suppress, McGuire filed the instant motion, seeking a hearing to challenge the above-described warrant. Dkt. No. 48; *see also* Dkt. Nos. 46-47. The government has filed a response in opposition to the motion. Dkt. No. 61. Despite being permitted the option, McGuire did not file a reply. *See* Dkt. No. 52. On June 13, 2025, the Court held a hearing on all of McGuire's March 29, 2025 motions. Dkt. No. 78. Although brief testimony was heard from Inspector Hess, it related solely to one of McGuire's other suppression motions, *i.e.*, not the instant motion. No other evidence was presented at the hearing. This Order now follows.

## LEGAL STANDARDS

McGuire moves for a hearing pursuant to *Franks*. In *Franks*, the Supreme Court explained that a defendant is entitled to an evidentiary hearing in order to challenge the "validity" of an affidavit supporting a warrant only if (1) the defendant alleges, with an offer of proof, that an affidavit contains "deliberate falsehood" or "reckless disregard for the truth", and (2) once the allegedly deficient information is set aside, the remaining content is insufficient to support a finding of probable cause. *Franks*, 438 U.S. at 171-172.

McGuire also argues that the warrant fails because it is overbroad and lacks particularity. The Ninth Circuit has succinctly described those legal principles as follows: "Breadth is the requirement that a warrant be limited by the probable cause on which the warrant is based, while particularity is the requirement that a warrant clearly state what is sought." *United States v. Holcomb*, 132 F.4th 1118, 1127 (9th Cir. 2025).

## DISCUSSION

The Court first addresses McGuire's contention that he is entitled to an evidentiary hearing with respect to the warrant at issue and then addresses McGuire's legal arguments that the warrant was overbroad and/or lacked particularity.

First, McGuire is mistaken that either part of the *Franks* framework is established here. McGuire contends that the warrant was "misleading" because it purportedly stated that a search of the entire Target Device "must be completed" and was "the only method" for locating relevant evidence. Dkt. No. 48 at 15-16. McGuire's characterization of the warrant affidavit, however, is itself, at best, misleading. Specifically, *nowhere* in the affidavit does it state that a search of the entire Target Device alone must occur, is the only search method, or is otherwise a necessity. In fact, the affidavit states the exact opposite: explaining to the Magistrate Judge that, depending on the circumstances, both targeted and more broad searches can be utilized to obtain relevant evidence from a cellular telephone. *See* Dkt. No. 48-1 at ¶¶ 25-26. The affidavit further indicates that, in this case, at the time of filing the warrant, the affiant did not know which method would be necessary, and, as a result, "request[ed] permission to use whatever dat[a] analysis techniques appear necessary" to retrieve relevant evidence. *Id*. at ¶ 26. There is, thus, nothing misleading about the warrant affidavit in this regard.[1]

---

[1] While the inquiry could end there, the Court notes that McGuire's misguided logic in this regard appears premised upon the idea that the *only* thing the government wished to search on the cell phone was data related to the Signal application. *See* Decl. of Spencer J. McInvaille at 4, Dkt. No. 48-2 ("In this case[,] the Signal application was sought. All of the data associated with the Signal application is stored within the file system of the device with a folder structure associated with Signal….A search of all data does not need to occur to find specific data."). This is, again, incorrect, as *nowhere* in the warrant or the affidavit does it state that a search is sought only of the Signal application. Among other things, Signal is mentioned in just one paragraph of the

Next, despite briefly acknowledging that *Franks* requires a showing that, purged of allegedly erroneous information, the affidavit would lack probable cause for a search, at no point does McGuire ever explain why, shorn of the paragraphs he challenges (specifically, paragraphs 25 and 26), the affidavit lacks probable cause. *See generally* Dkt. No. 48 at 15-16. At most, McGuire conclusorily asserts that a search of the entire Target Device was "beyond the scope of what a search warrant should have permitted." *See id*. at 6. This bare-boned conclusion, however, does nothing to address the numerous paragraphs of facts in the affidavit, *none* of which McGuire disputes, supporting probable cause to search the Target Device. As more fully discussed below, in addressing McGuire's overbreadth argument, those facts more than sufficiently provide probable cause to search the Target Device. More important to the instant *Franks* analysis, though, paragraphs 25 and 26 have nothing to do with whether probable cause existed to search the Target Device. Instead, those paragraphs concern the *manner* of executing the search. Therefore, even if they were stricken from the warrant affidavit, they would do nothing to upset the balance of probable cause therein. For these reasons, McGuire's request for a *Franks* hearing is DENIED.

---

entire application. The government sought to search far more than just what was contained in Signal and alerted the Magistrate Judge to that intent.

Apart from requesting an evidentiary hearing, McGuire also appears to contend that the search of the Target Device was overbroad, and the warrant lacked particularity. Dkt. No. 48 at 17-21. The Court now addresses these arguments in turn. As mentioned earlier, "[b]readth is the requirement that a warrant be limited by the probable cause on which the warrant is based…." *Holcomb*, 132 F.4th at 1127. Here, McGuire asserts that, while probable cause existed to search the Signal application, contacts, and the "USPS tracking app" on the Target Device, no such cause existed to search the entire Target Device. *See* Dkt. No. 17-18.

The Court disagrees. Initially, undoubtedly, there was probable cause to search the Signal application, contacts, and "USPS tracking app" on the Target Device. Among other undisputed facts, McGuire went to a postal office, retrieved a package that had originally been stuffed with drugs, showed Hess a sample of a Signal message thread on the Target Device indicating that McGuire was meant to pick-up the original package, admitted to using the Target Device to track packages sent to him, including through "text tracking alerts", admitted that he was paid $200 to pick-up packages in the past, and admitted to mailing large sums of money in return for the drugs he received. Arguably, the saying "caught red-handed" might not do justice in light of these undisputed facts. At the very least, it was likely not a difficult decision for the Magistrate Judge to find probable

10

cause. Moreover, contrary to McGuire's conclusory assertion, there was probable cause to search the *entire* Target Device. While McGuire's argument in this regard is hard to decipher, largely because it is never explicitly stated, it appears that, because McGuire only showed Hess a message thread on Signal and admitted to tracking packages, he claims that probable cause only existed for those limited things. That is simply absurd. Near certainty existed to search Signal, USPS tracking, and the Target Device's contacts list. In addition, in light of Hess' unchallenged assertions that, in his experience and training, individuals involved in the drug trade often use their cellular telephones to, *inter alia*, browse the internet, take photographs and videos, send text messages and emails, and make phone calls and calendar entries, and the facts in the affidavit that McGuire was likely involved in the drug trade and had used multiple facets of the Target Device to facilitate his involvement, there was probable cause to search the entire Target Device for evidence of drug trafficking. Anything less would defy common sense and, more importantly, defy the undisputed factual allegations in the warrant affidavit.

In this light, the warrant affidavit established probable cause to search the entire Target Device. The resulting search, therefore, was not overbroad, *see Holcomb*, 132 F.4th at 1127, and, thus, this argument is rejected.

11

This leaves particularity, which, as mentioned, requires "that a warrant clearly state what is sought." *Holcomb*, 132 F.4th at 1127. While McGuire's argument in this regard is, again, not a model of clarity, he appears to assert that the warrant lacked particularity because it permitted an "unfettered" seizure of records on the Target Device. *See* Dkt. No. 48 at 18-21. Other than describing the language of Attachment B as "formulaic", though, McGuire does not identify any specific language that is problematic. *Id*. In response, the government counters that Attachment B merely permitted a search for records on the Target Device related to "violations of law", including the drug crimes alleged in the affidavit. Dkt. No. 61 at 7.

Upon review, while it is hard to find agreement with McGuire's unspecific argument, the Court also does not agree with the government's characterization of Attachment B. The relevant provision therein is as follows: "The items to be seized include all records on the Target Device that relate to violations of law, including, specifically 21 U.S.C. § 846, Drug Conspiracy and or evidence of 21 U.S.C. § 841, Possession with intent to Distribute Controlled Substances." Dkt. No. 48-1 at 15. For the instant inquiry, the problem term there is "include". This is because "include" is a term "of enlargement, not of limitation." *Chemehuevi Indian Tribe v. Cal. State Bd. of Equalization*, 757 F.2d 1047 1054 (9th Cir. 1985),

12

*rev'd on other grounds in Cal. State Bd. of Equalization v. Chemehuevi Indian Tribe*, 474 U.S. 9 (1985); *see also* Black's Law Dictionary 880 (10th ed. 2014) (defining "include" as "[t]o contain as a part of something" and as "typically indicat[ing] a partial list[.]").  In this light, contrary to the government's assertion, Attachment B did not limit the seizure of evidence from the Target Device solely to the crimes alleged in the affidavit.  Put simply, by using the term "include", the warrant failed to limit the seizure to any discernible degree, and, thus, failed to sufficiently *particularize* the items that could be seized.[2]

This, however, is not the end of the inquiry because, as the government asserts without opposition, the Ninth Circuit has "embraced the doctrine of severance…." Dkt. No. 61 at 12 (citing cases, quotation omitted).  This allows a court to "strike from a warrant those portions that are invalid and preserve those portions that satisfy the Fourth Amendment." *Holcomb*, 132 F.4th at 1129.  As discussed, here, there was probable cause to search the entire Target Device for evidence of drug trafficking and seize any evidence relevant to the same.  In the motion, McGuire does not identify any piece of evidence that he seeks to suppress in this regard, let alone a piece of evidence seized from the Target Device that was

---

[2]Instead, Attachment B begets the question of "what is <u>not</u> included?"  The attachment provides no answer and, thus, impermissibly leaves "to the officer's discretion[]" what may be seized. *See Holcomb*, 132 F.4th at 1128-29.

<u>not</u> supported by the probable cause set forth in the affidavit, *i.e.*, evidence <u>not</u> related to the drug trafficking alleged.   As a result, based upon the current record, even if the language of Attachment B is corrected to comply with the Fourth Amendment, there is nothing to suppress.   The motion is, therefore, DENIED to the extent it can be construed as seeking suppression of any evidence.   Should this case proceed to trial, McGuire may file a motion in limine to exclude any evidence the admission of which would conflict with the findings herein.

## CONCLUSION

For the foregoing reasons, the instant motion, Dkt. No. 48, is DENIED.

IT IS SO ORDERED.

DATED: June 25, 2025 at Honolulu, Hawaiʻi.



Derrick K. Watson
Chief United States District Judge

---

*United States v. McGuire,* Case No. 23-cr-00054-DKW; **ORDER DENYING DEFENDANT KAIPO KEOLA MCGUIRE'S MOTION FOR *FRANKS* HEARING AS TO CELL PHONE EXTRACTION WARRANT**